IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KEVIN C. SULLIVAN,

    Plaintiff,

v.                                                              CASE NO. 1:19-cv-188-AW-GRJ

BOSTON SCI. CORP., et al.

    Defendants.

_____/

## ORDER AND
## REPORT AND RECOMMENDATION

    Pending before the Court is Defendant Boston Scientific Corporation's ("BSC") Motion to Dismiss Plaintiff's Amended Civil Complaint. ECF No. 11.[1] Plaintiff, proceeding *pro se*, has filed a response in opposition to the instant motion. ECF No. 13. The motion is therefore ripe for the Court's consideration. For the reasons discussed below, it is respectfully **RECOMMENDED** that BSC's motion to dismiss should be **GRANTED** and Plaintiff's First Amended Complaint should be **DISMISSED with leave to amend**.

---

[1] BSC also filed a memorandum of law in support of its motion to dismiss. ECF No. 12.

## I.  BACKGROUND[2]

This case concerns the operation of BSC's Precision Spectra Spinal Cord Stimulatory System ("Spectra System"), a Class III medical device approved for distribution by the United States Food and Drug Administration ("FDA") on April 27, 2004.[3]  Plaintiff—who maintains a lengthy medical history submitted as an exhibit to the First Amended Complaint—alleges that on March 28, 2015, Dr. John C. Stevenson at North Florida Regional Medical Center implanted the Spectra System into Plaintiff's spine, covering the second and third cervical vertebrae.  ECF No. 5-1 at 2.  Thereafter, the "pain stimulator batteries did malfunction and had to be surgically replaced."  *Id.* at 1.  Plaintiff identifies two follow-up surgeries performed on July 19, 2016, and May 30, 2017 by Dr. Stevenson to replace the "malfunctioned pain stimulator."  *Id.* at 2.

---

[2] As required when resolving a motion to dismiss, the Court accepts the facts alleged in the First Amended Complaint as true, construes those facts in the light most favorable to Plaintiff, and limits its consideration to the pleadings and exhibits attached thereto.  *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

[3] At BSC's request, ECF No. 12 at 9 (citing ECF Nos. 12-1, 12-2), the Court takes judicial notice under Federal Rule of Evidence 201 of the fact that the FDA granted BSC premarket approval for commercial distribution of the Spectra System.  *See Marmol v. St. Jude Med. Ctr.*, 132 F. Supp. 3d 1359, 1364 (M.D. Fla. 2015) ("Courts in this circuit have routinely taken judicial notice of public records available on the FDA's website, without converting a motion to dismiss into a motion for summary judgment, because such documents satisfy the requirements of Rule 201.").

Plaintiff filed suit against BSC, Boston Scientific Neuromodulation Corporation, and BSC President/CEO Michael F. Mahoney, claiming that the "pain stimulator batteries malfunction caused [him] to have an [sic] unnecessary surgeries and have severe pain and suffering." ECF No. 1 at 3. In his First Amended Complaint, Plaintiff asserts that the Spectra System was defective under Florida law, citing "FL Chapter 768," "FL Chapter 403-7," "FL Chapter 402-A," and "Restatement (Second) of Torts Section 402-A." ECF No. 5 at 4. Where Plaintiff is required to provide a statement of his claim(s) against Defendants in the First Amended Complaint, he refers to a three-page exhibit that includes: (1) a single-page certified letter to BSC, dated October 10, 2019; (2) a list of Plaintiff's surgeries from December 1969 through December 8, 2017, including the surgeries mentioned above; and (3) a list of Plaintiff's prescribed medications. ECF No. 5 at 6; ECF No. 5-1.

Plaintiff does not plead any additional allegations against Defendants in the First Amended Complaint. ECF No. 5. Plaintiff states in the "Relief Requested" section that he is seeking damages for "[two] surgeries to replace [Spectra System] batteries," as well as "pain and suffering, from additional surgeries on dates." *Id.* at 7.

3

BSC has moved to dismiss the First Amended Complaint on two grounds. ECF Nos. 11, 12. First, if the Court liberally interprets the First Amended Complaint as attempting to assert causes of action for negligence and strict (products) liability under Florida law, Plaintiff fails to state these claims because his limited allegations are conclusory. *Id.* at 11–14. Second, Plaintiff's state-law products liability claims concerning the Spectra System are preempted under the Medical Device Amendments Act of 1976 ("MDA"), 21 U.S.C. §§ 301 *et seq. Id.* at 14–19.

Plaintiff has filed a response in opposition, asking the Court to deny BSC's motion, but he does not address BSC's legal arguments therein. ECF No. 13. Plaintiff asserts, instead, that his "well documented additional unnecessary surgeries," as well as whistleblower complaint in the United States District Court for the District of New Jersey (which was filed and unsealed years before Plaintiff's initial March 28, 2015, surgery), demonstrate a lack of "care or professionalism" by BSC. *Id.* at 1–2. Plaintiff has also submitted copies of his medical records from relevant surgeries and a revised "list of surgeries." *Id.* at 4–19.

## II.  DISCUSSION

### A.  The Sufficiency of Plaintiff's Products Liability Claims

To properly plead a cause of action, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Determining whether a complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief may be granted turns on whether the plaintiff has alleged sufficient plausible facts to support her claims.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  As the Supreme Court held in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional … claim" are "not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681–84 (2009).  To escape dismissal, the complaint must allege facts sufficient to move claims "across the line from conceivable to plausible." *Id.* at 680.  "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  In other words, "The plausibility standard is met only

5

where the facts alleged enable the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013).

Lastly, the Court will not penalize a *pro se* litigant for "linguistic imprecision," *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008), but a cause of action must be discernable. A court does not have "license to … rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by*, *Iqbal*, 556 U.S. 678.

Here, the Court must first determine what causes of action Plaintiff has attempted to plead against BSC and the essential elements of those claims.[4] Because Plaintiff cites the Restatement (Second) of Torts § 402(A), ECF No. 5 at 4, which is the legal standard for strict liability in product defect cases in Florida, *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80 (Fla. 1976), the Court surmises he is attempting to assert a strict liability claim. "Under the theory of strict products liability adopted in [*West*], a product may be defective by virtue of a design defect, a

---

[4] "Because preemption is a principle derived from the Supremacy Clause, we must first analyze whether each claim can stand under state law, and only then decide the preemption questions where necessary." *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1328 (11th Cir. 2017).

6

manufacturing defect, or an inadequate warning." *Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (Fla. 4th DCA 1998).  There are three elements for a strict liability claim: "(1) a relationship between the defendant and the product; (2) a defect which caused the product to be unreasonably dangerous; (3) causation between the defect and the harm suffered by the user."  *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 607 (11th Cir. 2008); *see also West*, 336 So. 2d at 87.

Additionally, Plaintiff's citation to Chapter 768—which "generally concerns negligence and other tort actions," *Crisman v. Florida Atl. Univ. Bd. of Trs.*, 572 F. App'x 946, 948 (11th Cir. 2014)—suggests a negligence claim.  To state a claim for negligence, which "may occur at any stage of the design, manufacturing, or marketing process," *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1226 (M.D. Fla. 2009), a plaintiff must allege four elements: "(1) a legal duty of the defending party to protect the party seeking relief under the circumstances; (2) negligent failure by the defending party to comply with the duty; (3) injury to the party seeking relief as a result; and (4) damages," *Cintron v. Osmose Wood Preserving, Inc.*, 681 So. 2d 859, 861 (Fla. 5th DCA 1996).  A plaintiff also must show that the product was defective or unreasonably dangerous. *Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337, 1342 (M.D. Fla. 2003)

(citing *Siemens Energy & Automation v. Medina*, 719 So. 2d 312, 315 (Fla. 3d DCA 1998)).

BSC's challenges to the sufficiency of Plaintiff's claims are inextricably intertwined. BSC first argues as to negligence that Plaintiff has failed to allege "the existence of any duty owed by any defendant or the breach of any such duty." ECF No. 12 at 12. Second, BSC argues that Plaintiff's strict products liability claim must fail because he does not "establish a relationship between any of the defendants and the product at issue," and "does not allege any facts to support his conclusory assertion that the" Spectra System was defective. *Id.* at 13. These arguments are unavailing.

Although a plaintiff typically must allege the existence of a duty to state a claim for negligence, *see, e.g.*, *Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159, 1162–63 (S.D. Fla. 2009), BSC has conceded that it maintains some ownership over the Spectra System and is responsible for the product's distribution. *See* ECF No. 12 at 8 ("The product at issue is Boston Scientific's [Spectra System]."); ECF No. 12-1 at 2 ("Attached hereto … is a true and correct copy of a letter dated April 27, 2004, from the United States Food and Drug Administration to [BSC] granting premarket approval of the [Spectra System] and expressly authorizing BSC

to 'begin commercial distribution of the device upon receipt of this letter.'"). BSC therefore has "fair notice" of its legal duty pertaining to the Spectra System, *Twombly*, 550 U.S. at 555, and has not argued that any such duty does not give rise to a negligence claim as a matter of law. This also establishes a relationship between BSC and the product for Plaintiff to state a strict liability claim.[5]

BSC's arguments as to breach and defect likewise fail. "In essence, in the context of products liability, a plaintiff asserting negligence cannot prove breach without proving defect." *See Vela v. Sears Holding Corp., Inc.*, No. 10-CV-24011, 2011 WL 4737056, at *3 n.5 (S.D. Fla. Oct. 6, 2011). It is well-established in Florida law and the Eleventh Circuit that a plaintiff is not required at the pleading stage to state the source of the defect responsible for the harm suffered, such as a manufacturing or design defect. *Bailey*, 288 F. App'x at 605; *see also In re Monat Hair Care Prods. Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 18-MD-2841-GAYLES, 2019 WL 5423457, at *3 (S.D. Fla. Oct. 23, 2019) (collecting cases). Plaintiff alleges the batteries in BSC's Spectra System "did malfunction and had to be surgically replaced" on multiple occasions. ECF

---

[5] "Since *West*, Florida courts have expanded the doctrine of strict liability to others in the distributive chain including retailers, wholesalers, and distributors." *Samuel Friedland Family Enters. v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994).

No. 5-1 at 1.  Although this allegation is terse, it is sufficient at the pleading stage to notify BSC of the alleged defect (and, consequently, the purported breach of duty).  *See, e.g.*, *Egbebike v. Wal-Mart Stores East, LP*, No. 3:13-865-J-34MCR, 2014 WL 3053184, at *2 (M.D. Fla. July 7, 2014) (holding an allegation that an air mattress "suddenly popped, producing a large hole" alleged a defect in either the design or manufacturing of the air mattress).

In sum, the First Amended Complaint is not a model of clarity, but Plaintiff's allegations—read liberally, as they must—state claims for negligence and strict liability related to BSC's Spectra System.

### B. Federal Preemption of Plaintiff's State-Law Products Liability Claims under the MDA

The Court must now turn to BSC's second argument for dismissal—preemption.  That is, as BSC states, "Even if the Court finds that the Complaint has sufficient alleged a state law products liability claim"—which the undersigned has—"any such claim is preempted by Section 360k(a) of the [MDA] and must be dismissed."  ECF No. 12 at 14.  The undersigned will examine first the principles of preemption generally, then the scope of preemption under the MDA, and finally whether Plaintiff's claims are due to be dismissed.

The Supremacy Clause states that federal law is "the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. "It is basic to this constitutional command" that when federal and state law conflict "all conflicting state provisions [are] without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). This legal principle is known as preemption. *See Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1328 (describing preemption as "a principle derived from the Supremacy Clause"). "Congress's intent to preempt state law may be stated expressly in a statute or implied by the statute's structure and purpose." *Lawson-Ross v. Great Lakes Higher Ed. Corp.*, 955 F.3d 908, 916 (11th Cir. 2020) (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)).

BSC's preemption argument arises under the MDA. The MDA "classifies medical devices in three categories based on the risk that they pose to the public." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 476 (1996). Class III devices, such as the Spectra System, "present a potential unreasonable risk of illness or injury" or "are purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health." *Id.* at 477. The manufacturer of a Class III device "must provide the FDA with a

'reasonable assurance' that the device is both safe and effective" through a rigorous process known as "premarket approval." *Id.* (citing 21 U.S.C. § 360e(d)(2)).

The MDA both expressly and impliedly preempts certain state law claims relating to Class III medical devices. *Godelia v. Doe 1*, 881 F.3d 1309, 1317 (11th Cir. 2018). Section 360k(a) expressly "bars any claim based on a state law requirement 'which is different from, or in addition to, any requirement' under the MDA that 'relates to the safety or effectiveness of the device' or any other MDA requirement." *Id.* (quoting 21 U.S.C. § 360k(a)). And § 337(a) states that "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a). The Supreme Court and the Eleventh Circuit have interpreted § 337(a) as impliedly preempting state law claims seeking to privately enforce a duty owed to the FDA. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001); *Mink*, 860 F.3d at 1327.

There is a two-prong test to determine whether the MDA expressly preempts a plaintiff's state-law claims:

> First, a court must "determine whether the Federal Government has established requirements applicable to the device." If so, "the court must then determine whether the plaintiff's common-law claims are based upon state law requirements with respect

12

   to the device that are different from, or in addition to the federal ones, and that relate to safety and effectiveness."

*Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1300–01 (quoting *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 321–22 (2008)) (alterations adopted).  As to the first prong, "any device that goes through premarket approval will necessarily have federally established requirements," *Mink*, 860 F.3d at 1326, but a plaintiff need not rely on device-specific regulations to state a claim, *Godelia*, 881 F.3d at 1320.  The second prong requires a plaintiff to plead a "parallel claim" where the requirements between state and federal law are "generally equivalent," such that a manufacturer could not be held liable under state law without having violated federal law.  *Wolicki-Gables*, 634 F.3d at 1300; *see also Riegel*, 552 U.S. at 330 ("Thus, §360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements.").

  Read together, the MDA's express and implied preemption statutes close all but a "narrow gap" for a plaintiff to sue for private claims regarding the safety or effectiveness of Class III medical devices.  *Godelia*, 881 F.3d at 1317 (citing *In re Medtronic*, 623 F.3d 1200, 1204 (8th Cir. 2010)).  "To make it through, a plaintiff has to sue for conduct that violates a federal requirement (avoiding express preemption) but cannot sue only because

the conduct violated that federal requirement (avoiding implied preemption)." *Mink*, 860 F.3d at 1327.  Stated differently, "a plaintiff may proceed on her claim so long as she claims the 'breach of a well-recognized duty owed to her *under state law*' and so 'long as she can show that she was harmed by *a* violation of applicable *federal law*.'"  *Id.* (quoting *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010)) (emphasis added).[6]

Turning to this case, the gravamen of BSC's preemption argument is that "[P]laintiff has not alleged the violation of any federal regulation, device specific or otherwise."  ECF No. 12 at 19.  As the Eleventh Circuit's holdings in *Mink* and *Godelia* demonstrate, Plaintiff can raise a state-law negligence or strict liability claim regarding the Spectra System that is not preempted so long as the purported defect or breach stems from the violation of a federal regulation.[7]  The undersigned agrees with BSC,

---

[6] To be clear, there is no federal or common law claim based *only* on the breach of federal requirements and regulations.  See *Rowe v. Mentor Worldwide, LLC*, 297 F. Supp. 3d 1288, 1296 ("This is the quintessential claim that the Supreme Court held was impliedly preempted in *Buckman* because Rowe is suing under this theory 'because the conduct violated' the federal requirements.").  The claim must be based in state law on products liability, such as negligence or strict liability.

[7] *See Godelia*, 881 F.3d at 1318 ("Mr. Godelia … says the 'violation of the federal regulations noted above' caused the defect in Mr. Godelia's LifeVest.  On its face, this is sufficient to state a claim under Florida law for strict liability and negligence related to a manufacturing defect."); *Rowe*, 297 F. Supp. 3d at 1299 ("[T]he Florida common law duty to use due care in manufacturing is parallel to the federal requirement that a device be manufactured according to federal specifications.").

however, that the First Amended Complaint is due to be dismissed because Plaintiff does not "identify some pertinent federal regulation, a violation of that specific regulation, and sufficient facts to substantiate the allegation, including a causal link to the alleged injury." *Womack v. Nevro Corp.*, No. 8:19-cv-698-30SPF, 2019 WL 2567982, at *2 (M.D. Fla. June 21, 2019). This absence is dispositive. Without these allegations, Plaintiff's state law claims are preempted because they seek to hold BSC liable for requirements different from or in addition to those imposed under federal law.

Because Plaintiff's claims, as pleaded, are preempted under the MDA, BSC's motion to dismiss should be **GRANTED**.

### C. Leave to Amend

The only remaining question is whether Plaintiff should be granted leave to file a Second Amended Complaint. Ordinarily, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," *Foman v. Davis*, 371 U.S. 178, 182 (1962), leave to amend "should be freely given," Fed. R. Civ. P. 15(a). Plaintiff should have the opportunity to investigate and research whether BSC violated a pertinent federal regulation causing his injuries and, if so, to plead this allegation in a

Second Amended Complaint.[8]  Plaintiff's First Amended Complaint,

therefore, should be dismissed *with* leave to amend.

### IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED**:

1. Defendant BSC's Motion to Dismiss Plaintiff's Amended Civil Complaint, ECF No. 11, should be **GRANTED**.

2. Plaintiff's First Amended Complaint, ECF No. 5, should be **DISMISSED with leave to amend**.

It is **ORDERED** that:

3. Plaintiff's motions to "add new information and to continue (not to dismiss) this case," ECF Nos. 14, 15, are **DENIED**.

**IN CHAMBERS** this 23rd day of June 2020.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A**

---

[8] Because the undersigned recommends the Court grant Plaintiff leave to amend, his motions to "add new information and to continue (not to dismiss) this case," ECF Nos. 14, 15, are due to be **DENIED**.  Any information relevant to his claims against BSC may be included in his Second Amended Complaint or, if appropriate, in a "supplemental pleading," as contemplated under Federal Rule of Civil Procedure 15(d).  *See also Teal v. Spears*, No. 4:12-cv-456-RH-CAS, 2014 WL 116584, at *5 (N.D. Fla. Jan. 13, 2014) ("Plaintiff may not amend his complaint via his response to a motion to dismiss.").

**copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**